UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICO'L SHACKELFORD, as Next
of Friend of D.S., a Minor,                          Civil Action No. 21-10284

                              Plaintiff,             Robert H. Cleland
                                                     United States District Judge

v.
                                                     David. R. Grand
COMMISSIONER OF                                      United States Magistrate Judge
SOCIAL SECURITY,

                              Defendant.
_____/

**REPORT AND RECOMMENDATION ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 25, 28)**

  Nico'l Shackelford brings this action on behalf of her minor son, D.S. ("Plaintiff"),[1]

pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner

of Social Security ("Commissioner") denying Plaintiff's application for Supplemental

Security Income ("SSI") under the Social Security Act (the "Act").  Both parties have filed

summary judgment motions (ECF Nos. 25, 28), which have been referred to this Court for

a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.  RECOMMENDATION**

  For the reasons set forth below, the Court finds that the Administrative Law Judge's

("ALJ") conclusion that Plaintiff is not disabled under the Act is supported by substantial

---

[1] For convenience, the Court will refer to D.S., the minor child, as "Plaintiff" throughout this
Report and Recommendation, although his mother, Nico'l Shackelford, is the named plaintiff in
this action.

evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment **(ECF No. 28)** be **GRANTED**, Plaintiff's Motion for Summary Judgment **(ECF No. 25)** be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.    REPORT

### A.    Procedural History

Plaintiff was born on September 23, 2004, making him fourteen years old at the time his application for SSI was filed on September 28, 2018. (PageID.134-145).[2] He alleges a September 1, 2018 disability onset date, primarily as a result of "a learning disability." (PageID.159).

Plaintiff's application was denied initially on February 21, 2019. (PageID.82-92). Although on July 19, 2019, the Social Security Administration advised Plaintiff that his June 22, 2019 request for a hearing to challenge the initial decision was tardy, the Administration appears to agree that was not the case, and that Plaintiff had, in fact, timely submitted a request. (PageID.101-110). Accordingly, Plaintiff's claim proceeded to the stage where it would be considered by an ALJ.

Turning back to the June 22, 2019 request, Plaintiff's mother therein indicated that she "VEHEMENTLY OPPOSE[S]" the initial decision to deny Plaintiff's claim. (PageID.102). And, while she indicated that she did "wish to appear at the hearing," she also indicated that she had "no additional evidence to submit." (*Id.*). In her original request

---

[2] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 20.

for a hearing, Plaintiff's mother wrote that she was enclosing "supporting documents from [Plaintiff's] school records, which supports [his] disability is more severe than Social Security found," as well as "further statements from his teachers, physician[s] [sic], and further statements from me, as his mother, documenting how his activities are affected by his cognitive delays." (PageID.107-09).

On July 23, 2019, Plaintiff's mother signed and submitted Form HA-4608 ("Form 4608" or the "Form"), which is clearly entitled "Waiver of Your Right to Personal Appearance Before an Administrative Law Judge." (PageID.112). The Form advises the claimant (1) of his right "to appear in person before an Administrative Law Judge;" (2) that such a "personal appearance before an Administrative Law Judge would provide [the claimant] with the opportunity to present written evidence, [his] testimony, and the testimony of other witnesses;" and (3) that this "opportunity to be seen and heard could be helpful to the Administrative Law Judge in making a decision." (*Id.*). Just under this clear advice about the claimant's right to appear before an ALJ and the reasons why waiving that right might negatively impact the claimant's ability to present information that "could be helpful" to the ALJ, the Form provides, "Although my right to a personal appearance before an Administrative Law Judge has been explained to me, **I do not want to appear in person**. **I want to have my case decided on the written evidence**." (*Id.*) (emphasis added). The Form's next sentence gives the claimant an opportunity to provide "[t]he reason [he does] not want to appear in person at a hearing." (*Id.*). In the space for an answer, the following was written, apparently by Plaintiff's father:

> Daryl and Nico'l Shackelford would like to resubmit further statements

> from [Plaintiff's] teachers, physician, and further statements from me,
> and his mother, documenting how his daily activities are affected by
> his cognitive delays.

(*Id.*).

A few months later, in November 2019, Plaintiff's mother did, in fact, submit additional school records and her own statement about Plaintiff's limitations. (PageID.219-220).   Then, on December 12, 2019, Plaintiff's mother contacted the Administration by phone "for a status update on [Plaintiff's] claim." (PageID.222).  A note of the call by the Agency's representative makes no reference to Plaintiff wishing to attend an in-person hearing.  (*Id.*).  On the contrary, the note reflects Plaintiff's mother's belief – consistent with her execution of Form 4608 – that the documentary evidence in the record was sufficient:

> Claimant's mother called for a status update on her son's claim.  She
> waived the right to an oral hearing.  I reviewed the file and saw that
> she had completed form 4608 and ALJ approved the oral hearing
> waiver.  She submitted updated school records in November and feels
> that is enough to satisfy the record.  I advised her that the ALJ may
> want testimony in the case and if so, may schedule a hearing; however,
> if she does not show up, we will issue a decision based on the record.
> She understood.

(*Id.*).

The next event in the record is Administrative Law Judge Donald G. D'Amato's (the "ALJ") written decision dated February 3, 2020, finding that Plaintiff is not disabled under the Act.  (PageID.73-78).  At the outset of the decision, the ALJ explained that he decided Plaintiff's claim without a hearing because, based on Form 4608 and the Agency representative's note, Plaintiff's mother had "knowingly and voluntarily waived in writing

the right to personally appear and testify at a hearing on behalf of [Plaintiff]." (PageID.73) (citing PageID.112, 222). On February 4 and 5, 2020, Plaintiff's mother wrote to the Appeals Council to request a review of the ALJ's decision. (PageID.133, 224). Notably, despite the immediacy in which she voiced her objection to the ALJ's decision, Plaintiff's mother made no mention whatsoever of the ALJ having issued the decision without holding a hearing. (*Id.*). Rather, she argued that the ALJ's decision was "contrary to the substantial evidence in the record as a whole." (PageID.133). More specifically, she challenged the ALJ's analysis of Plaintiff's abilities, asserting that her son "continues to struggle in school and home setting," that "[t]hough he appears to be on task most of the time, observation of the work he performs reflect difficulties in understanding instruction and assignments," and that his "[w]ork is slow, especially written tasks, often incomplete, and inaccurate." (PageID.224). She did recognize that "in small group[s] or one on one instruction, [Plaintiff] is able to perform at a higher level." (*Id.*). She also indicated that she was enclosing additional reading and math scores. (*Id.*).

On November 20, 2020, the Appeals Council denied review. (PageID.63-65). Plaintiff timely filed for judicial review of the final decision on January 20, 2021. (ECF No. 1).

### B.    Framework for Child Disability Determinations

A child under age eighteen is considered "disabled" within the meaning of the Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Social Security regulations set forth a sequential three-step process for determining a child's disability claims: first, the child must not be engaged in "substantial gainful activity"; second, the child must have a "severe" impairment; and third, the severe impairment must meet, medically equal, or functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *See* 20 C.F.R. § 416.924(a).

To "meet" a listed impairment, a child must demonstrate both the "A" and "B" criteria of the impairment. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. Paragraph A of the Listings is a composite of medical findings that are used to substantiate the existence of a disorder, whereas the purpose of the paragraph B criteria is to describe impairment-related functional limitations that are applicable to children. *See id.* Further, to be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the Listing. *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

If a child's impairment does not "meet" a listed impairment, the impairment may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. *See* 20 C.F.R. § 416.926a. "Medical equivalency is covered by 20 C.F.R. § 416.926; functional equivalency is covered by Section 416.926a." *Vansickle v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 727, 729 (E.D. Mich. 2003).

"To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment." *Walls v. Comm'r of Soc. Sec.*, No. 1:08CV254, 2009 WL

1741375, at *8 (S.D. Ohio June 18, 2009) (citing 20 C.F.R. § 416.926(a)).  A claimant can

demonstrate medical equivalence in any of three ways:

> (1) by demonstrating an impairment contained in the Listings, but which does not exhibit one or more of the findings specified in the particular Listing, or exhibits all of the findings but one or more of the findings is not as severe as specified in the particular Listing, if the claimant has other findings related to his impairment that are at least of equal medical significance to the required criteria;

> (2) by demonstrating an impairment not contained in the Listings, but with findings at least of equal medical significance to those of some closely analogous listed impairment; or

> (3) by demonstrating a combination of impairments, no one of which meets a Listing, but which in combination produce findings at least of equal medical significance to those of a listed impairment.

*Evans ex rel. DCB v. Comm'r of Soc. Sec.*, No. 11-11862, 2012 WL 3112415, at *6 (E.D.

Mich. Mar. 21, 2012) (quoting *Koepp v. Astrue*, No. 10-C-1002, 2011 WL 3021466, at *10

(E.D. Wis. July 22, 2011)); *see also* 20 C.F.R. § 416.926.   "The essence of these

subsections is that strict conformity with the Listing Requirements is not necessarily

required for a finding of disability.  If a plaintiff is only able to demonstrate most of the

requirements for a Listing, or if he or she is able to demonstrate analogous or similar

impairments to the impairments of a Listing, the plaintiff may nonetheless still satisfy the

standards if the plaintiff can show impairments of equal medical significance."  *Evans*,

2012 WL 3112415, at *7 (quoting *Emeonye v. Astrue*, No. 04-03386 SC, 2008 WL

1990822, at *4 (N.D. Cal. May 5, 2008)).

Regarding functional equivalence, there are six "domains" that an ALJ considers:

(1) acquiring and using information, (2) attending and completing tasks, (3) interacting and

relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a. Functional equivalence to a listed impairment exists when the child has an "extreme" limitation in one of the six domains or "marked" limitations in two of the six. *See* 20 C.F.R. § 416.926a(d). An "extreme" limitation exists when a child's impairment(s) interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(3)(i). A "marked" limitation results if the child's impairment(s) interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2)(i).

### C.     The ALJ's Findings

Based on Plaintiff's mother's execution of Form 4608 and the Agency representative's note regarding the December 2019 phone call, the ALJ found that she had "knowingly and voluntarily waived in writing the right to personally appear and testify at a hearing on behalf of the claimant." (PageID.73). He then proceeded through the aforementioned three-step process. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 13, 2018, the application date. (PageID.74). At Step Two, the ALJ found that Plaintiff has the severe impairments of specific learning disability in reading, writing, and mathematics; asthma; eczema; and expressive and receptive language deficits. (*Id.*). At Step Three, the ALJ concluded that these impairments do not meet or medically equal a listed impairment. (PageID.74-75). The ALJ also found that Plaintiff's impairments do not functionally equal any Listing because, with respect to the aforementioned six "domains," he had: less than marked

limitations in attending and completing tasks, interacting and relating with others, and health and physical well-being; no limitation in moving about and manipulating objects and the ability to care for himself; and a marked limitation in acquiring and using information.  (PageID.75-78).  Accordingly, the ALJ determined that Plaintiff is not disabled under the Act.  (PageID.78).

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  The phrase "substantial evidence" is a "term of art …."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Id.* (internal citations omitted).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence …  is 'more than a mere scintilla.'"  *Id.* (internal citations omitted).  Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an

examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

    **E.**    **Analysis**

    In his motion, Plaintiff makes two principal arguments. First, Plaintiff argues that his mother "did not knowingly waive" the right to a hearing before the ALJ, and that the ALJ's decision to proceed without a hearing violated Plaintiff's substantive due process rights. (ECF No 25, PageID.321). As part of this argument, Plaintiff argues that "[n]othing in the record established that Plaintiff was informed that, if she proceeded to a hearing, the ALJ would have a duty to help her develop the record." (*Id.*, PageID.322). That dovetails with Plaintiff's second main argument – that the ALJ failed to fully develop the record.

For the reasons discussed below, these arguments lack merit.

        *1.     Substantial Evidence Supports the ALJ's Determination that Plaintiff Waived the Right to an In-Person Hearing*

Plaintiff argues that "the ALJ's opinion that Plaintiff knowingly waived her right to a hearing is both unsupported by substantial evidence and contrary to controlling legal standards governing a social security claimant's Due Process rights." (*Id.*, PageID.321). This argument lacks merit.

As the Commissioner notes, "[w]hile the Social Security Act, 42 U.S.C. § 405(b), and due process require that a claimant receive meaningful notice and an opportunity to be heard before his or her claim for disability benefits can be denied, '[t]here is no doubt that the right to appear can be waived.'" (ECF No. 28, PageID.343-44) (quoting *Stoner v. Sec'y of Health & Hum. Servs.*, 837 F.2d 759, 760-61 (6th Cir. 1988)). "In order to insure that any waiver is made voluntarily and knowingly, the [Commissioner] has promulgated Social Security Ruling (SSR) 79-19 to 'establish requirements necessary for a valid waiver of an individual's right to appear, in person or through a representative, and present evidence or information at a hearing before the Office of Hearings and Appeals.'" *Stoner*, 837 F.2d at 761 (quoting SSR 79-19, 1979 WL 15541, at *1 (1979)). SSR 79-19 provides:

> An individual or the individual's authorized representative may waive the right to personal appearance at a hearing only by a writing signed by the individual or the authorized representative which shows:
>
> 1. a thorough explanation of the hearing procedure has been given;
>
> 2. the right to personal appearance at the hearing to testify and present evidence has been explained;

3. an explanation has been given of the right to representation at the hearing by an attorney or other person of the individual's choice;

4. it has been explained that, in some cases, additional evidence obtained through oral testimony and personal presence before the presiding officer may be of value in evaluating the issues;

5. the individual has been advised that, if he or she does not appear, the claim will be decided solely on the written evidence then in file plus any additional evidence submitted by the individual or the representative or obtained by the hearing officer;

6. the individual has been advised that he or she may withdraw the waiver of the right to appear at the hearing at any time prior to mailing of the notice of the decision.

1979 WL 15541, at *2-3.

As explained above, *supra* at 3-4, on July 23, 2019, Plaintiff's mother signed Form 4608, expressly agreeing to waive the right to attend a hearing before an ALJ.  Absent extenuating circumstances, then, her execution of Form 4608 constitutes an effective waiver of that right because the Sixth Circuit has held that Form 4608 "precisely tracks each of the requirements for a valid waiver as established in Social Security Ruling 79-19." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490 (6th Cir. 2006).  In other words, Form 4608 satisfies a claimant's due process rights because it adequately explains his rights with respect to an in-person hearing, including the potential negative consequences of waiving that right. *Id.  See also*, *Wilder v. Astrue*, No. 07-cv-107, 2008 WL 650574, at *4 (E.D. Tenn. Mar. 5, 2008) ("Since plaintiff was informed of her rights to have her claim heard before an ALJ and chose to waive those rights [via Form HA-4608], her argument that she was denied due process is without merit.").

12

Plaintiff's arguments as to why the signed waiver was not made "knowingly" lack merit.  First, Plaintiff argues that "[n]othing in the record established that Plaintiff was informed that, if she proceeded to a hearing, the ALJ would have a duty to help her develop the record."  (ECF No. 25, PageID.321).  However, the Commissioner is correct that "no heightened duty for the ALJ to develop the record is triggered by a hearing alone."  (ECF No. 28, PageID.346) (citing *Depweg v. Comm'r of Soc. Sec.*, No. 14-cv-11705, 2015 WL 5014361, at *8 (E.D. Mich. Aug. 24, 2015) ("Simply appearing unrepresented at the hearing is not sufficient to constitute a special circumstance requiring a heightened duty to develop the record.")).  Rather, such a duty exists only where the claimant is without counsel, incapable of presenting an effective case, and unfamiliar with hearing procedures. *See Wilson v. Commissioner of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008); *Nabours v. Commissioner of Soc. Sec.*, 50 F. App'x 272, 275 (6th Cir. 1986).  Here, although Plaintiff did not prevail, it was not because he (with the assistance of his parents) was incapable of presenting an effective case.  As discussed below, Plaintiff submitted school and other records that speak directly to his claimed disability, and statements from his parents about his impairments.  In the waiver Form at issue, Plaintiff indicated a desire to submit additional records, and then did so.  (PageID.219-20, 222).  Moreover, Plaintiff fails to identify how, from an evidentiary perspective, a supposedly "effective" case presentation would have looked, even though it was his burden to show the alleged error was harmful to his case.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).[3]

---

[3] Plaintiff's related argument that his mother "was not fully advised of her options for assistance" similarly lacks merit.  (ECF No. 25, PageID.325).  In executing Form 4608, Plaintiff's mother

Second, Plaintiff makes a slew of assertions that essentially speak to his mother's alleged lack of understanding about the waiver issue.  For example, Plaintiff argues that his mother's execution of Form 4608 "suggests, at a minimum, that [she] thought she would benefit from waiving her right to a hearing by being able to submit additional evidence." (ECF No. 25, PageID.322).  But no such conclusion is compelled because Form 4608 made clear that the waiver wasn't an "either/or" election, and specifically advised Plaintiff's mother that she could "change [her] mind and decide to request a personal appearance before the Administrative Law Judge." (PageID.112).  Yet, she did not do so.

Plaintiff also contends that "nothing in the record suggests that [his mother] was told of or had any understanding of how a hearing might have aided her in developing the record through testimony or otherwise," and that "nothing suggests that she had any knowledge or understanding of why the ALJ might want testimony, or of the benefit of testimonial support for the documentary evidence that was submitted." (ECF No. 25, PageID.322).  Again, Form 4608 belies Plaintiff's argument because in signing that Form, his mother specifically asserted, "I understand that my personal appearance before an Administrative Law Judge would provide me with the opportunity to present written evidence, my testimony, and the testimony of other witnesses," and "I understand that this opportunity to be seen and heard could be helpful to the Administrative Law Judge in making a decision." (PageID.112).

---

represented, "I understand that I have a right to be represented and that if I need representation, the Social Security office or hearing office can give me a list of legal referral and service organizations to assist me in locating a representative." (PageID.112).

Third, Plaintiff's argument that his mother "fundamentally misunderstood the process when she signed the waiver" and wrote at the bottom about wanting to provide additional documentary support for Plaintiff's claim is belied by the record as a whole. (ECF No. 25, PageID.323-24).  The record reflects that Plaintiff's mother, who alleges no cognitive limitations of her own, regularly communicated with the Administration using her own stationary.  (PageID.106, 109, 114, 220, 224).  Yet, she chose to submit Form 4608, which clearly indicates it is a form used to waive a claimant's right to appear before an ALJ for a hearing, and advises the reasons why exercising that right may be disadvantageous.  (PageID.112).

Finally, Plaintiff's mother's subsequent conduct was all consistent with her expressions in Form 4608.  A few months after submitting Form 4608, Plaintiff provided additional school records and her own statement.  (PageID.219-20).  When Plaintiff's mother called to check the status of Plaintiff's claim, the record reflects that not only did she not request a hearing, she indicated her belief that the "updated school records she sent [a few weeks earlier] . . . is enough to satisfy the record."  (PageID.222).  And, although Plaintiff's mother wrote to the Appeals Council immediately upon receiving the ALJ's decision, she did not complain about the ALJ having decided Plaintiff's claim without a hearing.  (PageID.133, 224).  Rather, she simply argued that the ALJ's decision was "contrary to the substantial evidence in the record as a whole."  (PageID.133).  *See also supra* at 5.

Contrary to Plaintiff's interpretation, all of the foregoing constitutes "evidence that shows that Plaintiff['s mother] understood what she was giving up by waiving a hearing,

including [] the potential importance of a testimonial record . . ."   (ECF No. 31, PageID.370) (citing *Lashley v. Sec'y of Health & Human Servs*., 708 F.2d 1048, 1051 (6th Cir. 1983)).   Accordingly, substantial evidence supports the ALJ's finding that Plaintiff knowingly and voluntarily waived the right to a hearing.

### 2.   *The Record was Adequately Developed*

To the extent Plaintiff separately argues, "[i]n the absence of a hearing, there is no evidence from which this Court can conclude that the ALJ 'scrupulously and conscientiously' developed the facts," such claim fails.   (ECF No. 25, PageID.324).   First, Plaintiff failed to meaningfully develop this argument in terms of identifying any particular "facts" the ALJ should have further developed, and the ALJ specifically referenced the Agency staff note which reflects Plaintiff's mother having indicated her belief that the updated school records she submitted were "enough to satisfy the record."   (PageID.73, 222).   The only potential additional evidence Plaintiff contends should have been more fully developed relates to a letter submitted from his grandmother, in which she wrote that she was "familiar with [Plaintiff] and limitation[s] imposed by his learning disability," and indicated that she could be contacted if there were "any questions."   (PageID.213).   But again, Plaintiff did not offer any details about the information his grandmother would have shared that was not already in the record.   Thus, the Court could deem this argument waived.   *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (undeveloped claims are waived).

Second, the ALJ had before him, and cited, ample information regarding Plaintiff's limitations from his parents and teachers (and others), which information constitutes

substantial evidence in support of the ALJ's findings. For example, in support of his finding that Plaintiff had less-than-marked or no limitations in all of the domains other than acquiring and using information, the ALJ explained: "Progress reports from June 2018 did document difficulty in a whole-group setting . . . but [Plaintiff] had increased his ability to identify and express how terms were related in a group and his progress was higher than originally expected in reading where he was able to demonstrate skills at a fourth grade level when working independently and closer to a seventh grade level when supports such as text-to-speech were put in place as he had dramatically increased his ability to interpret word problems by using information to develop conclusions and provide supporting evidence." (PageID.76). The ALJ cited Plaintiff's 8th Grade school records which support these findings, including: PageID.265 ("[Plaintiff] has made good progress on all of his academic IEP goals and objectives. He is improving steadily in all areas"); PageID.277 (Plaintiff was "Progressing as Expected" in receptive language); PageID.278 (Plaintiff's "progress in [reading comprehension] has been higher than originally expected. His ability to use information read to develop conclusions and provide supporting evidence has improved dramatically."); PageID.279 (Plaintiff's "ability to read and interpret word problems [in math] has increased dramatically").

Turning to records from Plaintiff's 9th Grade school year, the ALJ explained that he "transitioned to a Section 504 accommodation plan . . . and his special education coordinator identified some slight to obvious problems with acquiring and using information as well as attending and completing tasks in October 2018 related to completing assignments in a timely manner, asking for support when he was unsure of

academic expectations, and having the most difficulty in English class, but he was making progress in some classes and no problems were observed with moving about and manipulating objects, caring for himself, or interacting and relating with others [] . . . a certified speech and language pathologist from his school additionally noted that his expressive language was below average, but his conversational speech was completely intelligible even in unknown contexts as he did not stutter or exhibit dysfluencies and his vocal quality, oral motor functioning, and structures were within normal limits." (PageID.76-77).  Again, the records cited by the ALJ support these findings.  (*See e.g.*, PageID.172-75 (9th Grade teacher reporting no "serious problem" and no "very serious problem" in "attending and completing tasks"; and "no problems" the domains of "interacting and relating with others," "moving about and manipulating objects," and "caring for himself"); PageID.179 (9th Grade Speech and Language Pathologist opining that Plaintiff's "conversational speech" was "100%" "intelligible" regardless of whether the context was known or unknown, and that his "speech," "vocal quality," "oral motor functioning," and structures were all within normal limits).

The ALJ also cited a February 2019 consultative psychiatric examination performed by F. Qadir, M.D.  (PageID.77).  Although Plaintiff takes great issue with Dr. Qadir's comments about Plaintiff's mother's credibility,[4] the ALJ also noted Dr. Qadir's findings

---

[4] Plaintiff argues that "[t]he ALJ relied on [Dr. Qadir's] conclusion, based on a single assessment at which Plaintiff provided some history, that Plaintiff, 'appeared to be exaggerating and giving wrong information [regarding] the minor claimant's clinical picture,' [], and found that [Plaintiff] was not disabled." (ECF No. 25, PageID.316-17 (citing PageID.77, 294-296)).  But as shown herein, the ALJ did not leap from Dr. Qadir's opinion to an ultimate conclusion that Plaintiff was not disabled.  Rather, the ALJ discussed substantial evidence in the record which supports his

that Plaintiff "appeared to be doing okay on mental status examination as he answered some questions on addition, subtraction, multiplication, and general fund of knowledge without any problems." (PageID.77). Again, that finding is supported by the cited record. (PageID.296) (Dr. Qadir finding Plaintiff's memory was adequate, his speech, thought content, and psychomotor activity were "normal," his thought process was "organized," he could perform simple calculations, had an "adequate" general fund of knowledge, and had "fair" judgment.).

Finally, the ALJ noted that Plaintiff's daily activities include "bathing, getting dressed, eating meals or snacks, attending school, doing homework or studying, discussing his day with adults, and going to the library with his mother, playing with his best friend, or playing video games when he was not in school; he was advanced athletically and very well behaved . . ." (PageID.77). These findings are based directly on a questionnaire prepared by Plaintiff's mother. (PageID.187). In the questionnaire, Plaintiff's mother also indicated that Plaintiff visits his best friend's home "as available." (*Id.*).

For all of the above reasons, Plaintiff's argument that the record was not properly developed lacks merit.

In sum, the Court recognizes that Plaintiff's learning disability causes him numerous

---

findings about Plaintiff's functional abilities in the salient domains. Moreover, in finding that Plaintiff's "learning disorder is causing a marked limitation in the [domain of acquiring and using information] as he is multiple grades below level in some areas," the ALJ imposed a limitation greater than that suggested by State agency reviewing psychological consultant. (*compare* PageID.75-78 with 82-91). And, as the ALJ recognized, Plaintiff's mother's statements to Dr. Qadir that Plaintiff was testing "at 2nd grade level" in English and math is, in fact, contradicted by his school records. (PageID.77, 170, 195, 264-66, 278, 295-96).

limitations and challenges that he has worked hard to address, and that his parents have been strong advocates for him, both in terms of his academic needs and his instant claim for Social Security disability benefits.  However, this Court's sole task is to review for "substantial evidence" the findings and rulings that comprise the ALJ's decision that Plaintiff is not disabled under the Act; the Court may not re-weigh the evidence, and must affirm the ALJ's decision if it is supported by substantial evidence in the record.  *See Biestek*, 139 S. Ct. at 1154; *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence.  That is solely the province of the [Commissioner]."); *Cutlip*, 25 F.3d at 286.  For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence and should be affirmed.

## III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 28)** be **GRANTED**, Plaintiff's Motion for Summary Judgment **(ECF No. 25)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: July 28, 2022                                s/David R. Grand
Ann Arbor, Michigan                           DAVID R. GRAND
                                                              United States Magistrate Judge

## REVIEW

Either party to this action may object to and seek review of this Report and Recommendation ("R&R"), but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed .R. Civ. P. 72(b)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this R&R.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. L.R. 72.1(d)(2).

> *Note these additional requirements at the direction of Judge Cleland:*

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this R&R to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 28, 2022.

s/Marlena Williams
In the absence of EDDREY O. BUTTS
Case Manager
